IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

|  |  |
|---|---|
| Edmund C. OLSON, as Trustee of the Edmund C. Olson Trust No. 2, U/A Dated August 21, 1985,  Plaintiff,  vs.  Abel Simeona LUI, et al.,  Defendants. | )))))))))))))))) Civ. No. 10-00691 ACK-RLP |

### ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING VARIOUS MOTIONS BY DEFENDANTS

### I. PROCEDURAL AND FACTUAL BACKGROUND[1/]

This action is a petition to expunge certain nonconsensual liens from the Bureau of Conveyances of the State of Hawaiʻi under Title 28, Chapter 507D of the Hawaiʻi Revised Statutes.  The petition was filed by Edmund C. Olson, as trustee of the Edmund C. Olson Trust No. 2, U/A Dated August 21, 1985 ("the Olson Trust").  The Defendants have filed the subject documents, which as will be described in the discussion below, include a purported judgment lien, four deeds, and an affidavit of geneaology.

---

[1/] Portions of this section are taken from a previous order of the Court's in related cases.

-1-

The Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because the issue in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.  Venue in the District of Hawaiʻi is proper under 28 U.S.C. § 1391 because the Defendants reside in the District of Hawaiʻi, all or a substantial portion of the events giving rise to the claims in this case occurred within the District of Hawaiʻi and the property that is the subject matter of this action is located in the District of Hawaiʻi.  Plaintiff Edmund C. Olson, as Trustee of the Edmund C. Olson Trust No. 2, u/a dated August 21, 1985 ("Plaintiff") is, and was at all times relevant hereto, the trustee of the Edmund C. Olson Trust No. 2, u/a dated August 21, 1985, and is a citizen of the County of Los Angeles, State of California; and Defendants are (or were as to deceased Defendants) citizens of the state of Hawaiʻi.

The real property that is the subject of this action is all of that certain parcel of land bearing Tax Map Key Number (3) 9-5-016-006, and containing an area of 81.303 acres, more or less ("the land").  (2d Am. Pet. ¶ 10.)  The Olson Trust acquired title to the land by deed from Thomas M. Okuna recorded October 25, 2005, as Document No. 2005-216739.  (2d Am Pet. Ex. A.)  A copy of that deed is attached to this order as Exhibit 1.

The land has been the subject of several previous actions. (One of these previous actions, filed in 1986 and discussed below, is the basis of the judgment lien that this petition seeks to have expunged.) In 1988, Thomas M. Okuna, the predecessor in interest to the Olson Trust, obtained a decree quieting title in his favor. (2d Mot. Mem. Pet. Ex. 8.) The decision in that case "Ordered, Adjudged and Decreed" that Okuna was "the owner in fee simple absolute" of several parcels of land, including those involved with this action as well as Tax Map Key Parcels (3) 9-5-016-5, 22, 23, and 25. (Id.) A copy of that judgment, together with the first page of that judgment's Exhibit A, describing the land to which title was quieted, is attached to this order as Exhibit 2.

In 2002, Okuna obtained a judgment of ejectment against Defendant Abel Lui, among others, and the state court issued a writ of possession in Okuna's favor. (Id. Exs. 9–10.) For whatever reason, this writ was never executed.

At one point, Defendant Abel Lui was convicted for criminal trespass on the land, and his conviction, which included a thirty-day jail sentence, was affirmed on appeal to the Intermediate Court of Appeals. (Id. Ex. 11.)

Finally, in 2011, in state court, the Olson Trust obtained summary judgment, a judgment for possession/ejectment, and a writ of possession in another ejectment action against

those defendants that are on the land.  (Id. Exs. 12-14.)[2/]  The Olson Trust has sold the land to the County of Hawaiʻi, but continues to pursue this action because it has continuing obligations to clear title to the land. (2d Mot. Mem. at 3 n.2.)

The case is now before the Court on two motions for summary judgment filed by the Olson Trust.  (ECF Nos. 33, 70.) The second, more recent motion involves the same documents that were at issue in the first motion, but is updated to reflect additional documents sought to be expunged in the second amended petition that the Olson Trust filed on June 17, 2011.  (ECF No. 42.)[3/]  Indeed, at the hearing, counsel for the Olson Trust

---

[2/] Defendants appealed that ruling and also attempted to remove the 2011 ejectment action to this Court after summary judgment had been entered against them.  The Court remanded the case to the state court.  See Olson v. Lui, Civ. No. 11-00396 ACK-RLP, 2011 WL 5330445 (D. Haw. Nov. 4, 2011).  Defendants have appealed the Court's remand order.

[3/] The Olson Trust seeks default judgment against the Estate of Beverly Yolanda Feleti; the Estate of Eliza Simeona; and Han Kamakani Phua.  (2d Mot. Mem. at 9 n.23.)  While it is true that these defendants failed to formally appear or file an answer (as did other defendants, such as Abel Simeona Lui, against whom the Olson Trust has not sought default judgment), and an entry of default against them has been filed; several filings have been made by the defendants who are in default or on their behalf.  In light of Defendants' pro se status, and the intertwined interests of Phua, the Feleti and Simeona estates, and the other defendants in this case, the Court construes Defendants' filings as implicitly containing a motion to set aside the entry of default under Federal Rule of Civil Procedure 55(c).  Given the lack of prejudice to the Olson Trust and the "strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits," Eitel v. McCool, 782 F.2d 1470, 1472 (9th Cir. 1986), the Olson Trust's motions for default judgment are DENIED.

indicated that the second motion for summary judgment was intended to supersede the first motion. Accordingly, the first motion for summary judgment, (ECF No. 33), is DEEMED WITHDRAWN.

Defendants have filed oppositions to each of the motions for summary judgment, and the Court considers both oppositions for purposes of this order. Additionally, Defendants, and others purporting to represent Defendants' interests, have filed several other documents in this case.[4] These documents are all essentially oppositions to Plaintiff's motions for summary judgments, but some of the filings might be construed as motions in their own right. (See, e.g., ECF Nos. 23, 61.) The Court therefore instructed the parties to be prepared to discuss all pending filings at the hearing on these motions, and intends this order as a final order resolving all pending issues in this case.[5]

---

[4] One person, Dianne K. Hoapili, appeared at the hearing and has filed two documents in this case: an "Intervention Declaration of Dianne K. Hoapili a.k.a. Kuuleimomi ʻO Paʻahao (A Shared Experience)" and a "Motion for Disclosure by Plaintiff's Attorneys and Director for the State of Hawaiʻi, Department of Land and Natural Resources." (ECF Nos. 68, 73.) At the hearing, Hoapili requested that the first filing be construed as a motion to intervene in this case. For the reasons discussed at the hearing, and for the reasons previously expressed in Magistrate Judge Puglisi's order in this case denying A H Lui's Motion to Intervene, Hoapili's motion to intervene, so construed, is DENIED. In any event, even if Hoapili were allowed to intervene in this case, the Court would deny her motions, as it finds them to be without merit.

[5] On the day before the hearing, Defendants filed motions
(continued...)

## II. STANDARD

### A. Motion for Summary Judgment

The purpose of summary judgment is to identify and dispose of factually unsupported claims and defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Summary judgment is therefore appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion," and can do so in either of two ways: by "citing to particular parts of materials in the record, including depositions, documents, electronically stored

---

[5/] (...continued)
seeking additional time and requesting that this case be heard by a three-judge panel. (ECF No. 78.) For the reasons discussed at the hearing, including that the Court finds them to be without merit, and for the reasons that the Defendants filed oppositions and have had ample time to prepare for the hearing and that there is no need or asserted authority for a three judge panel or special master (as briefly alluded to by the Defendants at the hearing), those motions are DENIED.

Defendants also have moved the Court to set a scheduling conference, asserting at the hearing that they have been denied an opportunity to participate in this case. The Court acknowledges that no formal scheduling order was entered in this case, although the docket reflects a number of status conferences. Defendants, however, have participated in this case fully. They appeared at the hearing and have filed hundreds of pages of documents in the thirteen months since this case was filed—this even though some Defendants actively resisted service, (ECF No. 6), and some failed to file an answer in this case. The Court finds that Defendants' motion to set a formal scheduling conference is untimely and would cause an unnecessary and undue delay to the resolution of this case. The motion is therefore DENIED.

information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case. A 'genuine issue' of material fact arises if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).[6] Conversely, where the evidence could not lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

The moving party has the burden of persuading the court as to the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323; Miller v. Glenn Miller Prods., 454 F.3d 975, 987

---

[6] Disputes as to immaterial facts do "not preclude summary judgment." Lynn v. Sheet Metal Workers' Int'l Ass'n, 804 F.2d 1472, 1483 (9th Cir. 1986).

(9th Cir. 2006).  The moving party may do so with affirmative evidence or by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  <u>Celotex</u>, 477 U.S. at 325.[7]  Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment.  <u>See</u> <u>Celotex</u>, 477 U.S. at 324; <u>Matsushita Elec.</u>, 475 U.S. at 586; <u>Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.</u>, 818 F.2d 1466, 1468 (9th Cir. 1987).[8]

---

[7] When the moving party would bear the burden of proof at trial, that party must satisfy its burden with respect to the motion for summary judgment by coming forward with affirmative evidence that would entitle it to a directed verdict if the evidence were to go uncontroverted at trial.  <u>See</u> <u>Miller</u>, 454 F.3d at 987 (quoting <u>C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.</u>, 213 F.3d 474, 480 (9th Cir. 2000)).  When the nonmoving party would bear the burden of proof at trial, the party moving for summary judgment may satisfy its burden with respect to the motion for summary judgment by pointing out to the court an absence of evidence from the nonmoving party.  <u>See</u> <u>id.</u> (citing <u>Celotex</u>, 477 U.S. at 325).

[8] Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact.  <u>Villiarimo v. Aloha Island Air, Inc.</u>, 281 F.3d 1054, 1061 (9th Cir. 2002); <u>see also</u> <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987); <u>Johnson v. Wash. Metro. Area Transit Auth.</u>, 883 F.2d 125, 128 (D.C. Cir. 1989) ("The removal of a factual question from the jury is most likely when a plaintiff's claim is supported solely by the plaintiff's own self-serving testimony, unsupported by corroborating evidence, and undermined either by other credible evidence, physical impossibility or other persuasive evidence that the plaintiff has deliberately committed perjury."), <u>cited in</u> <u>Villiarimo</u>, 281 F.3d at 1061.

The nonmoving party must instead set forth "significant probative evidence" in support of its position. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting First Nat'l, 391 U.S. at 290). Summary judgment will thus be granted against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. See Celotex, 477 U.S. at 322.

When evaluating a motion for summary judgment, the court must construe all evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. See T.W. Elec. Serv., 809 F.2d at 630-31.[9/] Accordingly, if "reasonable minds could differ as to the import of the evidence," summary judgment will be denied. Anderson, 477 U.S. at 250-51.

**B.**       **Special Considerations for a Pro Se Litigant**

A pro se litigant's pleadings must be read more liberally than pleadings drafted by counsel. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004); Eldridge v. Block, 832 F.2d 1132, 1137 (9th Cir. 1987). When a plaintiff proceeds pro se and technically violates a rule, the court should act with leniency toward the

---

[9/] At the summary judgment stage, the court may not make credibility assessments or weigh conflicting evidence. See Anderson, 477 U.S. at 249; Bator v. Hawaii, 39 F.3d 1021, 1026 (9th Cir. 1994).

pro se litigant. Draper v. Coombs, 792 F.2d 915, 924 (9th Cir. 1986); Pembrook v. Wilson, 370 F.2d 37, 39-40 (9th Cir. 1966). However, "a pro se litigant is not excused from knowing the most basic pleading requirements." Am. Ass'n of Naturopathic Physicians v. Hayhurst, 227 F.3d 1104, 1107-08 (9th Cir. 2000).

The district court must observe additional requirements when considering a motion for summary judgment or a pleading construed as such against a pro se prisoner litigant. In such a case, the court must ensure that a pro se prisoner, as the non-moving party, is afforded affirmative notice of the requirements and consequences of Federal Rule of Civil Procedure 56. Anderson v. Angelone, 86 F.3d 932, 934-935 (9th Cir. 1996); Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988). However, the additional notification requirement does not extend to non-prisoner pro se litigants. Rand v. Rowland, 154 F.3d 952, 956 (9th Cir. 1998); Jacobsen v. Filler, 790 F.2d 1362, 1364 (9th Cir. 1986).

### III. DISCUSSION

**A.** **The Statutory Framework**

The Hawai'i State Legislature has found:

> that there is a problem with the recording at the land court or the bureau of conveyances of invalid instruments which purport to affect the property interests of various persons, including but not limited to government officers and employees. These instruments, which have no basis in fact or law, have a seriously disruptive effect on

>     property interests and title.  They appear on
>     title searches and other disclosures based on
>     public records, and are costly and
>     time-consuming to expunge.  When they so
>     appear, they may obstruct a property owner's
>     ability to transfer title or obtain title
>     insurance and financing.

Haw. Rev. Stat. § 507D-1.  Because the "bureau of conveyances does not have the discretionary authority to refuse to record instruments so long as those instruments comply with certain minimal format requirements," the legislature found "that it is necessary and in the best interests of the State and private parties to legislatively provide a means to relieve this problem, and to limit the circumstances in which nonconsensual common law liens shall be recognized in this State and to remedy the filing of frivolous financing statements."  Id.

Among the remedies provided is a legal action to have invalid nonconsensual liens expunged.  See Haw. Rev. Stat. § 507D-4 ("Any party in interest in real or personal property which is subject to a claim of nonconsensual common law lien, who believes the claim of lien is invalid, may file a petition in the appropriate circuit court to contest the validity of that purported lien"); id. § 507D-7 ("If the circuit court finds the purported lien invalid, it shall order the registrar to expunge the instrument purporting to create it, and order the lien claimant to pay actual damages, costs of suit, and reasonable

-11-

attorneys' fees.").[10] This action was filed pursuant to those statutes.

**B.      The "Judgment" in Civ. No. 86-1083**

The first document to address is the document entitled "Subpoena, Restraining Order, Notice, Order and Judgment in a Civil Case," recorded July 30, 2008, as Document No. 2008-121458. (2d Am. Pet. Ex. G.)[11] The document contains copies of several filings from a case that was filed in this district court in 1986, Simeona v. Okuna, Civ. No. 86-1083.

The Court has reviewed the record in Simeona v. Okuna, and takes judicial notice of its contents. See Fed. R. Evid. 201. The initiating document in that case was called a "Common Law Lien of Attachment and Demand At-Law (Common Law)," and was filed on November 26, 1986.[12] That case was dismissed on May 5, 1987, for lack of prosecution, lack of service, lack of

---

[10] At the hearing, Defendants questioned whether this Court, sitting in diversity, may assume the role of a Hawai'i state circuit court, that is, whether the circuit court has exclusive jurisdiction over petitions to expunge nonconsensual common law liens. Nothing in Chapter 507D confers exclusive jurisdiction on the state circuit court and precludes a federal court sitting in diversity from hearing this case, and in any event, "state law may not control or limit the diversity jurisdiction of the federal courts." Begay v. Kerr-McGee Corp., 682 F.2d 1311, 1315 (9th Cir. 1982).

[11] The first page of this document is attached to this order as Exhibit 3.

[12] The document references the 1983 quiet title action filed by Okuna, indicating the Simeona plaintiffs' awareness of that action.

jurisdiction, and failure to attend.  The <u>Simeona</u> plaintiffs had failed to appear for at least three hearings, on March 19, April 3, and April 10, 1987.  The latter two hearings concerned an order to show cause why the complaint should not be dismissed, which was issued after the <u>Simeona</u> plaintiffs failed to appear at the March 19 scheduling conference.  The minutes of the April 10 hearing reflect that the case would be dismissed, and a "Report and Recommendation to Dismiss" the case was filed on April 14, 1987.

Although they failed to serve the defendants in that case with the initiating document or appear at the hearings, the <u>Simeona</u> plaintiffs filed a number of documents, both before and after it was dismissed, including the following:

(1) A "Restraining Order/Public Notice and Warning of Trespass/Notice of Eviction," filed on July 9, 1987;

(2) A "Notice of Error <u>Quae Coram Nobis</u> Resident," filed on July 8, 1987;

(3) A "Judicial Notice of Writ of Execution," filed on April 27, 1987;

(4) A "Judicial Notice and/or Writ of Prohibition and Caveat," also filed on April 27, 1987;

(5) A "Judicial Notice, Constructive Notice, Special Appearnce Notice, At-Law, and Demand that the Court Proceed Lawfully," filed on April 9, 1987;

(6) A "Notice of Special Appearance, and Demand that the Court Proceed Lawfully," filed on April 2, 1987;

(7) A "Notice Denying Ex Post Facto Scheduling Conference," filed on March 18, 1987;

(8) A "Notice of Special Appearance," also filed on March 18, 1987; and

(9) An "Entry of Default Judgment," and a memorandum in support, filed on January 12, 1987.

The "Judicial Notice of Writ of Execution" stated that the district court had decided the case on January 12, 1987, and awarded the plaintiffs $2,500,000.  This statement is plainly incorrect, given that the case was dismissed for lack of prosecution several months later.  The "Entry of Default" was filed by the Simeona plaintiffs, not by the court.  No judgment against the defendants in that case was ever entered by the court.  The Simeona plaintiffs, Rhoda and Eliza Simeona, lost the case.  The "Judicial Notice of Writ of Execution" is nonetheless the basis of the judgment lien that is one of the subjects of this action.

The Court concludes that the document entitled "Subpoena, Restraining Order, Notice, Order and Judgment in a Civil Case," Document No. 2008-121458, (2d Am. Pet. Ex. G), is an invalid nonconsensual common law lien.  See Haw. Rev. Stat. § 507D-7.  The Olson Trust is entitled to have the document

expunged. The motion for summary judgment is therefore GRANTED as to this document.

**C.      The Four Deeds**

The Court now turns to the four deeds at issue in this case, that is:

(1) the deed from Abel Simeona Lui, as grantor, to Beverly Yolanda Feleti, as grantee (the "Lui/Feleti Deed"), recorded January 14, 2002, as Document No. 2002-006264 (2d Am. Pet. Ex. B);

(2) the deed from Beverly Yolanda Feleti, as grantor, to Abel Simeona Lui, as grantee (the "Feleti/Lui Deed"), recorded January 14, 2002, as Document No. 2002-006265 (2d Am. Pet. Ex. C);

(3) the deed from Abel Simeona Lui, as grantor, to Han Kamakani Phua, as grantee (the "Lui/Phua Deed"), recorded March 12, 2004 as Document No. 2004-051779 (2d Am. Pet. Ex. D); and

(4) the deed from Han Kamakani Phua, as grantor, to Abel Simeona Lui, as grantee (the "Phua/Lui Deed"), recorded March 12, 2004, as Document No. 2004-051780 (2d Am. Pet. Ex. E).[13]

The first question concerning these documents is whether section 507D-7 applies to them. Under the ordinary

---

[13] The first page of each of these documents is attached as an exhibit to this order. (See Exs. 4-7.)

definition of the word "lien," it would be questionable whether section 507D-7 is applicable to the four deeds. See Black's Law Dictionary 1006 (9th ed. 2009) (defining "lien" as a "legal right or interest that a creditor has in another's property, lasting [usually] until a debt or duty that it secures is satisfied"). Yet "lien" is a defined term in the statute, and the definition is broad enough to encompass the deeds. See Haw. Rev. Stat. § 507D-2 ("'Lien' means a recorded instrument that creates an encumbrance on or affects title or ownership of property."). The findings and purpose of the statute are also sufficiently broad to cover the deeds. See id. § 507D-1 ("The legislature finds that there is a problem with the recording at the land court or the bureau of conveyances of invalid instruments which purport to affect the property interests of various persons."). The Court therefore concludes that section 507D-7 is applicable to the four deeds, as well as the affidavit of genealogy (discussed infra).

       The Court further concludes that the deeds are invalid nonconsensual common law liens, which the Olson Trust is entitled to have expunged. Defendants, and others who have filed documents in this case, make several arguments based on inheritance and/or paper title as to why Okuna's title to the land was invalid, or why Defendants retain an interest in the land. But Okuna's clear title to the land has been conclusively determined by the state court. Moreover, Defendants, or at least

Lui, have previously lost several other actions in that court concerning the land at issue. (2d Am. Pet. Exs. 8-14.) Defendants cannot relitigate in this Court any claim that could have been addressed in the prior state-court actions. See Tortorello v. Tortorello, 113 Haw. 432, 439, 153 P.3d 1117, 1124 (2007) ("[T]he judgment of a court of competent jurisdiction is a bar to a new action in any court between the same parties or their privies concerning the same subject matter, and precludes the relitigation, not only of the issues which were actually litigated in the first action, but also of all grounds of claim and defense which might have been properly litigated in the first action but were not litigated or decided.") (emphasis omitted) (quoting Bremer v. Weeks, 104 Haw. 43, 53-54, 85 P.3d 150, 160-61 (2004)).[14/] Accordingly, Defendants are barred from relitigating these issues in this Court or raising them for the first time. The Olson Trust's motions for summary judgment are GRANTED as to the four deeds.

### D.     The Genealogy

---

[14/] Defendants have not argued in this Court, nor shown, that they gained title to the land via adverse possession. Any such claim would be precluded, as it should have been raised, if at all, in the prior proceedings; adverse possession can be a defense to ejectment. See, e.g., Keamalu v. Luhau, 7 Haw. 324, 325 (1888) ("[A] plaintiff in ejectment need not show possession within twenty years if he shows title and no adverse possession is proved."); see also Tortorello, 153 P.3d at 1124.

The final document at issue is the "Affidavit of Genealogy," recorded June 10, 2004, as Document No. 2004-117405. (2d Am. Pet. Ex. F.)[15/]  The Court finds that the document "purport[s] to affect the property interests of various persons" in the subject property, in that it asserts that the geneaology is "attached" to the property.  Haw. Rev. Stat. § 507D-1.  The genealogy therefore falls within the purview of section 507D-7. For the same reasons discussed above, the Court finds that the Olson Trust is entitled to have the genealogy expunged.  The Olson Trust's motions for summary judgment are therefore GRANTED as to the genealogy.

### E.       **Whether the Liens Were Frivolous**

The statute provides additional remedies for purported liens that are frivolous, including a $5,000 minimum award and the ability to "issue appropriate injunctive relief."  Haw. Rev. Stat. § 507D-7(a), (b).  The statute defines "frivolous" as "without any basis in law or fact."  While the various liens in this case were invalid, the Court finds that at least some of them had a basis in fact: the Defendants believed they had an interest in the property through their genealogy and Lui, and perhaps others, had been on the land at some point in time.[16/]

---

[15/] The entirety of this document is attached to this order as Exhibit 8.

[16/] The record does not reflect whether anyone was on the
(continued...)

Moreover, although this factor is not determinative, the Court notes that the deeds were all recorded before the Olson Trust purchased the property.  In any event, the Court finds that the liens were not frivolous for purposes of section 507D-7 (with the qualification noted in footnote 16).

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion for summary judgment.  The Court will enter an order directing the registrar to expunge the instruments at issue.  See Haw. Rev. Stat. § 507D-7(a).  Plaintiff is AWARDED costs and attorneys' fees.  See id.  To the extent that any of Defendants' filings may be construed as motions for summary judgment or other relief in their own right, rather than as oppositions to Plaintiff's motions, such motions are DENIED.

---

[16/] (...continued) land when Civ. No. 86-1083 was filed; but in any event, the record reflects that the plaintiffs in that case are now either incapacitated or deceased, so neither heightened penalties nor injunctive relief seem necessary or appropriate against them.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, January 6, 2012.



_____
Alan C. Kay
Sr. United States District Judge

Olson v. Lui, Civ. No. 10-00691 ACK-RLP: Order Granting Plaintiff's Motion for Summary Judgment and Denying Various Motions by Defendants